UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
RASHIDA TYLER; ANNE AMES;
BEETLE BAILEY; PHILIP ERNER;
RACHEL GANS; KATRINA HOUSER;
LISA ROYER; AMANDA SISENSTEIN;
and KIM WHEELER,

                               Plaintiffs,

    -v-                                 1:22-CV-1

CITY OF KINGSTON,

                               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                     OF COUNSEL:

BERGSTEIN & ULLRICH, LLP      STEPHEN BERGSTEIN, ESQ.
Attorneys for Plaintiffs
5 Paradies Lane
New Paltz, New York 12561

COOK, TUCKER LAW FIRM        MICHAEL T. COOK, ESQ.
Attorneys for Defendant
85 Main Street
P.O. Box 3939
Kingston, New York 12401

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

## I. <u>INTRODUCTION AND BACKGROUND</u>

    In this case, plaintiffs Rashida Tyler, Anne Ames, Beetle Bailey, Philip

Erner ("Erner"), Rachel Gans, Katrina Houser ("Houser"), Lisa Royer,

Amanda Sisenstein, and Kim Wheeler (together "plaintiffs") are challenging

defendant the City of Kingston ("Kingston" or the "City")'s policies regulating

speech during City Council meetings.

Plaintiffs are members of a pair of activist organizations—Rise Up

Kingston and Wednesday Walks 4 Black Lives—focused on grappling with

police misconduct and diversity issues.  Dkt. 1 ("Compl."), ¶ 14.  Plaintiffs

and Kingston started building toward a clash in the summer of 2021, when

the City's Council was contemplating purchasing an armored rescue vehicle

for its emergency services department.  *Id.* ¶ 14.  Perhaps predictably,

plaintiffs opposed the idea.  *Id.* ¶ 15.

Kingston's City Council met on August 3, 2021, to vote on whether to

purchase the vehicle.  Compl. ¶ 14.  Every plaintiff except for Erner planned

on attending that meeting to protest the purchase.  *Id.* ¶ 15.  Each of them

bore signs and/or posters with slogans demonstrating their position.  *Id.*  But

the City Council struck first.  When plaintiffs arrived, they were confronted

with a new rule prohibiting the public from bringing signs or posters into

City Hall.  *Id.* ¶ 16.  The City apparently meant it, because there was a sign

on the building and police out front to enforce the prohibition.  *See id.* ¶ 20.

Confronted with the sign ban, all of the plaintiffs except for Houser left

their signs at the door and attended the meeting anyway.  Compl. ¶ 20.  For

her part, Houser claims she felt too intimidated by the police to enter.  *Id.*

On August 11, 2021, plaintiff Erner also attempted to attend a City Council meeting to protest Kingston's proposal to install surveillance cameras around the City.  Compl. ¶ 21.  He, too, was prevented from entering City Hall with his sign.  *Id.*

According to plaintiffs, the sign ban was enacted just before the August 3, 2021 meeting in a deliberate attempt to curb their ability to protest.  Compl. ¶ 24.  The sign ban remains in effect to this day.  *Id.* ¶ 22.

Plaintiffs brought the present complaint on January 3, 2022, claiming that the ban violates their rights under 42 U.S.C. § 1983 ("§ 1983") and the First Amendment.  On January 31, 2022, Kingston moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  The Court heard oral argument on March 8, 2022.  The motion will now be decided on the complaint, the other submissions, and the parties' oral arguments.

## II. <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That factual matter may be drawn from "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

3

Importantly, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  If the complaint and its additional materials—when viewed through that pro-plaintiff lens—are not enough to raise the plaintiff's right to relief above the speculative level, the complaint must be dismissed.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**III. DISCUSSION**

The First Amendment protects the freedoms of speech, religion, press, and assembly.  U.S. CONST. amend. I.  Yet "[n]othing in the Constitution requires the government freely to grant access to all who wish to exercise their right to free speech on every type of [g]overnment property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Leg. Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

In the absence of a showing of a clear and present danger, the contours of permissible government restrictions on speech are defined by the nature of the forum subject to the restriction. *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017).  Fora come in four types: (1) a traditional public forum; (2) a designated public forum; (3) a limited public forum; and (4) a nonpublic forum. *Id.* at 171-72.  A public City Council meeting—like the one at issue in

4

this case—is normally considered a limited public forum. *See Weinberg v. Vill. of Clayton*, 537 F. Supp. 3d 344, 364 (N.D.N.Y. 2021). Neither party argues that the City Council meetings should be treated otherwise, and the Court cannot see any reason that another type of forum would better fit these facts. The City Council meetings will therefore be regarded as limited public fora for the purposes of the present motion.

In a limited public forum, the government is permitted to make content-based restrictions on speech as long as that speech falls outside "the category of uses to which the forum has been opened." *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 553 (2d Cir. 2002).

What, precisely, is meant by "the category of uses to which the forum has been opened" is not quite so straightforward as might be hoped. After all, the Second Circuit has used a number of different words interchangeably to identify the same concept, including: (1) "genre," *Travis v. Oswego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991); (2) "category," *Hotel Emps.*, 311 F.3d at 553; (3) "general purpose," *Zalazki v. City of Bridgeport Police Dep't*, 613 F.3d 336, 342 (2d Cir. 2010); and (4) "type of expression," *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004). "Genre" and "category" could both be read to mean that any speech concerning the same content that the forum was opened to address must be protected. But

"general purpose" and "type of expression" both suggest the format of the speech in question, as well as its content.

Plaintiffs argue that their signs were to protest the purchase of the armored vehicle and the installation of the surveillance cameras, and that by extension they were of the same "genre" as the topic of discussion raised in each forum. Thus, their position is that it was unconstitutional for Kingston to forbid the signs within City Hall. The City contends that plaintiffs were still permitted to participate in both meetings, and thus the "genre" dispute is beside the point.

The Second Circuit seems to treat the "genre" inquiry as only requiring that the public be permitted to speak on the same issue that the limited public forum is meant to address: the government is still permitted to regulate how that speech is delivered. In fact, *Hotel Employees* is itself a perfect example. In that case, the Second Circuit upheld prohibitions on rallies and leafletting in a particular limited public forum, because the forum was intended to allow for entertainment and artistic performances rather than purely political speech. 311 F.3d at 553-54.

In other words, the government was permitted to regulate how the public presented its message, so long as it did not discriminate on the content of the message. Because nowhere have plaintiffs alleged that they were denied *all* opportunity to protest at the meeting by being prevented from bringing signs

into the City Hall, they have failed to allege exclusion.  Accordingly,

plaintiffs' arguments that the sign ban was a restriction on speech within the

"genre" the City Council meetings were called to discuss fails.

But that does not end the inquiry.  Even exclusions that have nothing to

do with the genre, format, or category for which the forum was opened must

both be reasonable and must not discriminate based on viewpoint.  *Hotel*

*Emps.* 311 F.3d at 553.

The viewpoint-neutrality requirement ensures that—once the government

has permitted speech on a given topic—it cannot "regulate speech in ways

that favor some viewpoints or ideas at the expense of others."  *Byrne v.*

*Rutledge*, 623 F.3d 46, 55 (2d Cir. 2010).  In other words, a rule is neutral as

to viewpoint if it is "based only upon the manner in which speakers transmit

their messages . . ., and not upon the messages they carry[.]"  *Turner*

*Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645 (1994).

Plaintiffs have alleged that Kingston's sign and poster prohibition

discriminates based on viewpoint because it was enacted right before the

August 3, 2021 meeting to silence their voices.  For their part, defendants are

adamant that the prohibition on signs inside City Hall is neutral even taking

that allegation as true, because any signs in favor of purchasing the tank or

surveillance cameras would be just as prohibited as plaintiffs' anti-tank and

anti-camera signs.

The fact that the prohibition remains in effect undercuts any minimal inference of foul play that plaintiffs would ascribe to the timing of the policy. Compl. ¶ 22.   In any case, even if a law or policy is "motivated by the conduct of the partisans on one side of a debate," that does not establish that the law or policy discriminates based on viewpoint.  *Hill v. Colorado*, 530 U.S. 703, 724 (2000).

Nowhere have plaintiffs alleged that proponents of the policies they opposed were permitted to bring signs into City Hall or were otherwise treated differently from their opponents.  *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) (considering and rejecting viewpoint discrimination claim based on selective enforcement of speech where plaintiff fails to establish that other viewpoints were treated differently).

Nor even have plaintiffs alleged that signs are more important to their cause than they would be to their opponents'.  *Perry v. McDonald*, 280 F.3d 159, 170 (2d Cir. 2001) (permitting prohibition of scatological references on license plates because restrictions applied equally to all perspectives on issue).  Had plaintiffs made any allegations along any of those lines, they might have had a viable viewpoint discrimination claim, but the absence of any of those allegations amounts to a critical failure.

Turning next to the reasonableness of a restriction on speech in a public forum, a "restriction must be assessed in light of the purpose of the forum and all the surrounding circumstances[.]" *Hotel Emps.*, 311 F.3d at 554. That inquiry considers the forum's special attributes—including its nature and function—to determine whether the restrictions on speech are "reasonably related" to the government's interest in maintaining the environment it chose for the forum. *Id.*

Plaintiffs argue that Kingston's no-sign rule was an unreasonable restraint on their free speech because it was unrelated to any legitimate government interest, notwithstanding any claimed danger that their signs might have posed. The City counters that the rule was intended to ensure that the Council meeting went smoothly, safely, and with proper decorum. Nevertheless, plaintiffs answer that it would be improper to dismiss their complaint before allowing discovery on the City's reasons for imposing the no-sign rule.

The issue of reasonableness presents the closest call of all the parties' arguments. Even so, plaintiffs have failed to plausibly allege a constitutional deprivation. Their focus on the lack of any danger stemming from their signs or any active disruption largely misses the point. Once again, the question in assessing the reasonableness of a restriction on a limited public forum is

whether the restriction comports with the government's interest in adhering to the forum's intended environment.  *Hotel Emps.*, 311 F.3d at 554.

Excluding signs and posters from a meeting of the City Council is reasonably related to keeping the tenor of the meetings from devolving into a picketing session inside City Hall.  Even assuming that Kingston must clear a higher burden than traditional rational basis review, their justification fits the rubric for a permitted limited restriction on speech in a limited public forum.

Both parties seemed not to entirely grasp how that rubric works.  For its part, Kingston argues for any number of justifications (from outside the bounds of the complaint) that do not speak to their right to maintain an appropriate environment for City Council meetings.  Meanwhile, plaintiffs mostly rely on cases from outside this Circuit—or that do not truly advance their argument—to undercut the facial reasonableness of the sign ban.

Two of those cases will suffice as examples.  The first, *We the People, Inc. v. Nuclear Regulatory Comm'n*, is both non-binding and contrary to plaintiffs' argument.  746 F. Supp. 213 (D.D.C. 1990).  In that case, the District Court for the District of Columbia expressly held that a prohibition on signs was reasonable due to the advanced explanation that posters can be "visually disruptive" to the meeting and its general tenor.  *Id.* at 217-18.  Where that restriction ran aground was viewpoint-neutrality, because *only* signs

espousing a certain point of view were removed from the venue. *Id.* As discussed above, there are no allegations supporting viewpoint discrimination in the complaint—indeed, plaintiffs did not argue in either their briefs or at oral argument that the complaint plausibly alleges viewpoint discrimination. As a result, *We the People* would not have helped plaintiffs' cause even if it had come from within this Circuit.

Similarly, plaintiffs misapprehend the import of *International Society for Krishna Consciousness, Inc. v. Lee.* 505 U.S. 672 (1992). While plaintiffs correctly relayed at oral argument that that case found leafletting at an airport—a nonpublic forum—to be constitutionally protected, they failed to meaningfully grapple with what makes this case different from that one. *Id.* at 690. Crucial to the holding permitting leafletting was that the airport in question featured restaurants, bars, and shops that made it a "large, multipurpose forum" that undercut the legitimacy of a restriction on the brief, "mechanical" operation of receiving a leaflet. *Id.* at 688, 690.

A City Council meeting has only one "purpose": allowing the City Council to discuss and decide local issues while giving the public access to that process. From that perspective, it is not unreasonable for Kingston to want to keep its meeting reserved for spoken comment from the public on relevant issues while excluding signs or other demonstrable items that might distract from that intended environment of an efficient discourse. *Cf. DeFabio v. E.*

11

*Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 474-75 (E.D.N.Y. 2009) (holding that restrictions on students' speech in school may be reasonable given unique conditions of schools as limited public fora).

Plaintiffs—despite being counseled and despite the Court taking as broad a view of the facts alleged in the complaint as it possibly can—have failed to allege anything with more teeth than suspicious timing. But of course, that timing goes only to Kingston's intent in imposing the sign ban. And even if the Court assumes that the last-second imposition of the sign ban suggests that the City intended to target plaintiffs, that does not amount to a constitutional violation in the absence of any suggestion that plaintiffs were treated differently than their opponents. *See Hill*, 530 U.S. at 724 (holding that policy motivated by members of particular movement that applies neutrally to all viewpoints is not unconstitutional).

Thus, plaintiffs' complaint fails to plausibly allege a constitutional deprivation in the concededly applicable context of a limited public forum, even under the favorable standard afforded them by Rule 12(b)(6).

## IV. <u>CONCLUSION</u>

Plaintiffs successfully alleged that Kingston circumscribed part of their speech in advance of a pair of City Council meetings in August of 2021. However, even viewing the complaint in the light most favorable to plaintiffs, they have failed to allege sufficient facts to establish that: (1) their speech

was restricted in the category of speech that those meetings contemplate; (2) they were discriminated against based on their viewpoint; or even (3) the sign ban was unreasonable under these circumstances.  In other words, plaintiffs have failed to allege facts that the sign ban was unconstitutional in any way.  Plaintiffs' complaint, having failed to raise a legitimate issue of an infringement on constitutionally protected speech, must be dismissed.

Therefore, it is

ORDERED that

1.  Plaintiffs' complaint is DISMISSED; and

2.  The Clerk of the Court is directed to enter judgment accordingly and close the case file.

IT IS SO ORDERED.

Dated:  March 16, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge